DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

Jerry Engleson,                                    )
                                                   )     CASE NO. 5:09 CV 2969
                      Plaintiff,                   )
                                                   )
              v.                                   )     MEMORANDUM OPINION
                                                   )
Unum Life Insurance Company of America,            )
                                                   )
              and                                  )
                                                   )
Seibert Keck Long Term Disability Income           )
Plan,                                              )
                                                   )
                      Defendants.                  )

I.  INTRODUCTION

A.      The Complaint

        In this action, plaintiff seeks to recover long-term disability benefits for a 2001 claim

filed pursuant to the Seibert Keck Long Term Disability Plan - Policy No. 344788-002 (Plan),

attached to plaintiff's complaint as Exhibit A, and to this Memorandum Opinion as Attachment

1.  ECF 1.

        According to the facts alleged by plaintiff, he became disabled and qualified for long

term disability benefits in 2001 under the terms of the Plan:

                8.      Engleson was employed as an insurance producer by Seibert Keck, an
                        insurance agency, from 1985, until approximately December 23, 2008.

                9.      By virtue of his employment with Seibert Keck, Engleson became a
                        participant in the Plan, insured and administered by Defendants.  The Plan
                        provides, *inter alia,* disability income benefits for persons who are
                        disabled as defined by the Plan.

(5:09 CV 2969)

     10.    Disability and disabled as defined by the Plan states "that because of an injury or sickness: you cannot perform each of the material duties of your regular occupation; or you, while unable to perform all of the material duties of your regular occupation on a full-time basis, are: performing at least one of the material duties of your regular occupation or another occupation on a part-time or full-time basis; and earning currently at least 20% (twenty percent) less per month than your indexed predisability earnings due to that same sickness or injury."

     11.    Engleson became disabled under the terms of the Plan on or about June 2001, while employed by Seibert Keck, and filed for long term disability benefits, which were denied.  Engleson was diagnosed with severe, steroid dependent Crohn's Disease and anemia, among other disabling medical conditions, and was disabled under the Plan.

Count 1 of plaintiff's complaint alleges that defendant arbitrarily and capriciously denied his 2001 long term disability claim under the terms of the Plan, and seeks to recover those benefits pursuant to the Employee Retirement Income Security Act of 1974 (ERISA) 502(a) and 29 U.S.C. § 1132(a)(1)(B).

## COUNT I - RECOVERY OF WRONGFULLY DENIED BENEFITS UNDER ERISA 502(a) and 29 U.S.C. § 1132(a)(1)(B)

     . . . .

     20.    Engleson brings this claim pursuant to ERISA 502(a) and 29 U.S.C. § 1132(a)(1)(B) seeking long term disability benefits from the Plan that are due and owing.

     21.    Engleson had exhausted his administrative remedies under the Plan on February 10, 2009.

     22.    Defendants have acted arbitrarily and capriciously in administering the Plan, including the February 10, 2009 denial of Engleson's long term disability claim pending from June 2001.  Therefore entitling Engleson to a *de novo* review by this Court.

2

(5:09 CV 2969)

23.     As such, pursuant to 29 U.S.C. § 1132(a)(1)(B), Engleson is entitled to recover unpaid benefits due to him under the terms of the Plan and to enforce his rights under the terms of the Plan.

In Count 2, plaintiff also seeks equitable relief.

## COUNT 2 - EQUITABLE RELIEF

. . . .

26.     Defendants are fiduciaries of the Plan.

27.     As fiduciaries, Defendants had a duty to discharge their duties with respect to the Plan solely in the interest of the participant and beneficiaries of the Plan.

28.     Engleson had not been given a full and fair review of his 2001 claim as promised by Defendant's December 23, 2008 letter which Defendants, finally, arbitrarily, and capriciously denied on February 10, 2009.  Therefore entitling Engleson to a *de novo* review by this Court.

29.     In addition, Engleson had not been afforded a full and fair review of his claim as required by 29 U.S.C. § 1133, and as extended to the Claims Reassessment Process as required by the RSA,[1] enacted on November 1, 2004 and is an arbitrary and capricious breach of their fiduciary obligations.  Therefore entitling Engleson to a *de novo* review by this Court.

Defendants answered the complaint and asserted, among others, the affirmative defense that plaintiff's claims are time barred.[2]  ECF 13.

---

[1] Regulatory Settlement Agreement, as hereinafter defined.

[2] "Plaintiff's claims herein were not timely filed within the time period(s) required by the applicable policy."  ECF 13, Eleventh Defense.

(5:09 CV 2969)

B.      Procedural Background

The Court referred this case to the United States Magistrate Judge for general pre-trial supervision.  The Magistrate Judge conducted a case management conference and established a schedule for filing the administrative record and briefing.  ECF 23.

Subsequently, in the context of a dispute over discovery sought by plaintiff, the defendants raised with the Magistrate Judge the question of whether plaintiff's complaint regarding the denial of disability benefits in 2001 is barred by the long-term disability policy's three-year contractual statute of limitations clause.  The Magistrate Judge conducted a telephonic status conference, established a briefing schedule on the timeliness issue, and vacated the previously established schedule for briefing the case on the merits of plaintiff's claims.  *See* Minute Order dated July 13, 2010.

The parties extensively briefed the issue of timeliness, as well as questions concerning the content of the administrative record in this case.  *See* ECF 32, 38, 42, 44, 49 and 50.  With respect to the administrative record, defendants have requested to supplement the administrative record, as discussed further, below.  ECF 42, footnote 1.

After the timeliness issue was fully briefed, the case was returned to the undersigned when the Court terminated the referral to the Magistrate Judge upon her confirmation by the U.S. Senate as a District Court Judge for the Northern District of Ohio.  The Court then issued its own questions regarding the administrative record with respect to plaintiff's 2001 claim for disability benefits, to which the parties responded.  ECF 51, 52 and 53.  Subsequently, the Court conducted

4

(5:09 CV 2969)

an evidentiary hearing.  After the evidentiary hearing and the preparation of the transcript, the

parties filed post-hearing briefs.  *See* ECF 57.

C.      Posture of the Case

        The issue of whether plaintiff's complaint is time barred presents itself to the Court in a

unconventional manner.  In their answer, defendants asserted the affirmative defense that

plaintiff's complaint is time barred by a contractual statute of limitations, and then raised that

issue before the Court in the context of a discovery dispute.  No motion was filed by either side

regarding the question of timeliness, and even defendants' "request" to supplement the

administrative record was not submitted to the Court in the form of a motion.

        However, all parties recognize that a determination by the Court in defendants' favor on

the contractual statute of limitations issue is dispositive of plaintiff's claims.  In his

memorandum responding to defendants' brief regarding the timeliness of plaintiff's complaint,

plaintiff states:

                "The parties agreed that they would brief the issue of the Defendant's assertion
                that Plaintiff's complaint was barred by a contractual statute of limitations clause.
                For the following reasons, the Court should determine as a matter of law that the
                Plaintiff's complaint is not barred by a contractual statue of limitations."[3]

        With that understanding, both sides have extensively briefed the issue and the Court

conducted an evidentiary hearing.

        _____

        [3] Plaintiff's Memorandum in Response to Defendant's Brief on the Alleged Contractual
        Statute of Limitations (ECF 38).

        5

(5:09 CV 2969)

For the reasons contained herein, the Court concludes that plaintiff's complaint is time barred by a three-year contractual statute of limitations.  Accordingly, plaintiff's complaint is DISMISSED.

## II.  FACTUAL BACKGROUND

A.      Seibert Keck Long-term Disability Income Plan

Plaintiff Jerry Engleson began working for his employer, Seibert Keck Insurance Agency, in 1985.  As a Seibert Keck employee, plaintiff participated in the Plan, which was funded by a long-term disability policy and administered by defendant Unum Life Insurance Company (Unum).  The parties do not dispute that the Plan is governed by ERISA.  As discussed, *supra*, plaintiff's complaint alleges that he became disabled in 2001 and is entitled to long-term disability benefits pursuant to the terms of the Plan attached to his complaint, and that defendant arbitrarily and capriciously denied his 2001 claim.

In his complaint, plaintiff specifically refers to the Plan as controlling his 2001 claim, including for example, the terms for administrative appeal of a denial of benefits,[4] disability income benefits,[5] and definition of disability and disabled.[6]  In addition, the Plan contains a provision limiting the time in which a legal action may be filed regarding a denied claim, which provides as follows:[7]

---

[4] ECF 1, par. 6.

[5] ECF 1, par. 9.

[6] ECF 1, par. 10.

[7] ECF 1-1, p. 17 of 23.

6

(5:09 CV 2969)

**Can legal proceedings be started at any time?**

No, you or your authorized representative cannot start any legal action:

1.  until 60 days after proof of claim has been given; nor
2.  more than 3 years after the time proof of claim is required.

B.  <u>2001 Long-term Disability Claim</u>

1.  *Plaintiff's 2001 long-term disability claim denied*

On June 14, 2001, plaintiff made a claim for long-term disability benefits effective June

15, 2001(ECF 35, UA-CL-LTD 319).[8]  Plaintiff's 2001 claim was assigned claim number

0098940671.  By letter dated August 22, 2001, defendant Unum denied plaintiff's disability

claim on the grounds that there was no evidence that plaintiff had been continuously disabled

from the date of his last day of work through the requisite policy elimination period (ECF 35,

UA-CL-LTD 368-370).

Unum's letter denying plaintiff's 2001 disability claim advised plaintiff of the process he

should undertake in order to appeal that decision, as well as the time-frame for doing so.[9]

_____

[8] The administrative record was filed under seal in this case for both plaintiff's 2001 and
2008 claims.  ECF 35 and 36.

[9] "[I]f you disagree with our determination and intend to appeal this claim decision, you
must submit a written appeal.  This appeal must be received by us within 90 days of the date of
this letter.  Your written appeal should include  . . . [and] [y]ou should submit your written
appeal to the following address: . . ." ECF 35, UA-CL-LTD 370.

Plaintiff claims that Unum's letters denying his 2001 claim and appeals did not notify
him of the contractual statute of limitations provision for filing a legal action as required by
regulation, and therefore the defendants cannot now enforce that provision.  However, in 2001,
the federal regulations governing ERISA required that a notice of an adverse claims decision
provide: "Appropriate information as to steps to be taken if the participant . . . wishes to submit
his or her claim for review."  9 C.F.R. § 2560.503-1(f)(4).  This version of the regulations, which
(continued...)

7

(5:09 CV 2969)

Plaintiff filed an administrative appeal, but Unum upheld its determination to deny benefits (ECF 35, UA-CL-LTD 76).  Subsequently, Unum received a letter from one of plaintiff's medical providers and re-evaluated plaintiff's claim.  However, as communicated to plaintiff in a letter dated November 29, 2001, Unum again upheld its decision to deny plaintiff's long-term disability claim (ECF 35, UA-CL-LTD 60-61).

Until the instant case was filed, plaintiff did not file an action in federal court regarding the denial of his 2001 claim.  In connection with his 2001 claim, plaintiff was required to file a proof of claim no later than 90 days after the end of the elimination period, which is the 180 day period following the onset of disability.  Plaintiff's 2001 claim stated that his disability began June 15, 2001.  Therefore, plaintiff's proof of claim date was 270 days after June 15, 2001, or March 12, 2002.  Pursuant to the limitations provision, plaintiff was required to take legal action within three years from the date he was required to file a proof of claim.  Therefore, plaintiff had until about March 12, 2005 to file a legal action in connection with Unum's denial of his 2001 claim for long-term disability benefits.[10]

    2.    *2001 claims file*

The administrative record for plaintiff's 2001 claim does not contain the entire long-term disability policy that was utilized by Unum to review plaintiff's 2001 claim.  The portions of the

---

[9](...continued)
was in effect when plaintiff's 2001 claim and appeals were denied, did not require specific notice of a right to bring a civil action and applicable time limits.  *See Smith v. Westvaco Corporation Voluntary Employees Beneficiary Ass'n Long Term Disability Plan*, 399 F. Supp. 2d 692, 695 (D.S.C. 2005).

[10] The instant action was filed on December 22, 2009, over four years and nine months after the date plaintiff was required to file his proof of claim.

(5:09 CV 2969)

policy contained in the administrative record for plaintiff's 2001 claim are found in the administrative record at ECF 35, UA-CL-LTD 22-45.

The parties agree that the portions of the policy contained in the 2001 administrative record do not contain any reference to a three-year limitations period beyond which the claimant may not commence legal proceedings.  While the missing portions of the policy are relevant to defendants' statute of limitations argument, those portions were not utilized in connection with Unum's review of the merits of plaintiff's 2001 disability claim.  As discussed below, defendants seek to supplement the 2001 administrative record with the entire policy applicable to plaintiff's claim in 2001, which includes the three-year limitations provision that defendants contend bars the instant action.

C.      2008 Long-term Disability Claim

1.      *Plaintiff's 2008 long-term disability claim approved*

On August 5, 2008, plaintiff submitted another claim for long-term disability benefits (ECF 36, UA-CL-LTD 672 and 684).  Plaintiff's 2008 claim was assigned claim number 4382995.  By letter dated December 23, 2008, Unum advised plaintiff that his 2008 claim had been approved (ECF 36, UA-CL-LTD 1128-1133).

Unum's December 23, 2008 correspondence is six (6) pages long and contains information regarding plaintiff's long-term disability benefits.  In addition, the letter acknowledges that plaintiff filed a long-term disability claim in 2001 which was denied, and that the denial was upheld by Unum on both of plaintiff's internal administrative appeals.  With respect to plaintiff's 2001 claim, Unum's letter further states: "We are unable to overturn a

9

(5:09 CV 2969)

disability claim where 2 appeals have been clearly made and upheld; therefore your August 5, 2008 date of disability is the correct date to use in administering your claim."   ECF 36, UA-CL-LTD 1129.

Unum's letter then goes on to discuss the administration of the long-term disability benefits plaintiff would be receiving as a result of his 2008 claim and then states: "If you or your physician(s) have additional information to support your request for disability benefits based upon an earlier date of disability, we will be happy to reconsider your claim."   ECF 36, UA-CL-LTD 1130.  Defendant's letter concludes with instructions to plaintiff regarding how to appeal Unum's 2008 long-term disability benefits determination.

Plaintiff's response to Unum's December 23, 2008 letter reflects that he believes Unum's denial of his 2001 long-term disability claim was incorrect and that 2001, not August 5, 2008, should be his disability date for the purposes of his 2008 disability claim.[11]  Plaintiff then refers to the language in Unum's December 23rd letter inviting information to support an earlier date of disability, and inquires as to what information Unum needs to reconsider a disability date in 2001.[12]  However, Unum advised plaintiff that he had already been afforded two appeals with

---

[11] "While I am happy that UNUM has accepted my claim, I am somewhat disappointed that UNUM has chosen to use August 5, 2008 as the date of disability."   (ECF 36, UA-CL-LTD 1189).

[12] "In the last paragraph of page 3 or your letter, you indicate that if I, or my physicians, have additional information to support my request for disability benefits based upon an earlier date of disability that UNUM will be happy to reconsider my claim.  Please let me know what information you need to reconsider an earlier date and I will be happy to have Doctor's . . . provide you with it.  All three Doctors considered me disabled when I filed for disability in 2001 and still consider me to be disabled with virtually no chance of there being any significant improvement in my health in the future."  ECF 36, UA-CL-LTD 1189-90.

10

(5:09 CV 2969)

respect to the denial of his claim for long-term disability benefits in 2001 and Unum would not

undertake any additional reviews of that claim.

> "Unum has already afforded you two appeal review relevant to an earlier
> period of loss dating back to 2001 (claim number 0098940671).  As such,
> we will not be completing an additional appeal review at this time."

ECF 36, UA-CL-LTD 1208-09.

This lawsuit followed.

    2.    *2008 claims file*

The administrative record for plaintiff's 2008 claim contains the portion of the long-term

disability policy that limits the time in which plaintiff may file a federal legal action to 3 years,

and provides as follows:

> "H.    LEGAL PROCEEDINGS
>
> A claimant or the claimant's authorized representative cannot start any legal
> action:
>
> 1.  until 60 days after proof of claim has been given; nor
> 2.  more than 3 years after the time proof of claim is required."

ECF 36, UA-CL-LTD-817.

D.    <u>Regulatory Settlement Agreement</u>

In 2004, Unum entered into a Regulatory Settlement Agreement (RSA) with the United

States Department of Labor and forty-nine state jurisdictions, including Ohio.  The RSA sets

forth a number of provisions, including plan of corrective action and provisions for enforcement

of Unum's compliance with the plan of corrective action, in connection with an investigation to

determine if Unum's long-term disability claims handling practices reflected "systemic 'unfair

11

(5:09 CV 2969)

claims settlement practices' . . ." *See* ECF 38-1. As part of the RSA, Unum was required to

send notifications to persons whose claims were denied between 1999 and 2004 about the option

of having their claims reviewed again. This process was known as the Claims Reassessment

Process. Plaintiff's 2001 claim, which was denied, was one of the claims included in the Claims

Reassessment Process. As later discussed, plaintiff claims he never received a claims

reassessment notice pursuant to the RSA.

### III. PENDING ISSUES

A.   Unum Claims Plaintiff's Complaint is Time-barred and
     Requests to Supplement the 2001 Administrative Record

In connection with defendants' defense that plaintiff's complaint is barred by a three-year

contractual statute of limitations, defendants request leave to supplement the 2001 administrative

record to include the language from the applicable policy that contains the three-year statute of

limitations. *See* ECF 42, footnote 1. Defendants assert that the Seibert Keck policy has always

contained a three-year limitations provision from the time it was issued to present. At the

evidentiary hearing, Catherine Morrissette, a senior consultant for Unum, testified that the three-

year statute of limitations provision in the long-term disability policy was contained in the policy

when it first became effective in December 1, 1989 and was never revised or omitted from

subsequent versions of the policy. ECF 56, pp. 23-24.

Specifically, defendant seeks to supplement the administrative record for plaintiff's 2001

claim to include the entire copy of the policy "as it existed" in 2001. *See* Defendants' Reply

12

(5:09 CV 2969)

Brief on the Timeliness of Plaintiff's Claim for ERISA Benefits, ECF 42, pp. 2-5 of 13.[13]  The

document defendants seek to add to the record is attached as Exhibit 1 to the affidavit of Bruce

Dominick. ECF 42-2 and 42-1, respectively.  The page of the policy containing the three-year

limitations language is identified as UNUM 31 in ECF 42-2.

> The relevant portion of UNUM 31 provides as follows:

>> "H.    LEGAL PROCEEDINGS

>>> A claimant or the claimant's authorized representative cannot start any legal action:

>>> 1.    until 60 days after proof of claim has been given; nor
>>> 2.    more than 3 years after the time proof of claim is required."

> ECF 42-2, p. 27 of 32.

This language is virtually identical to the three-year limitations language contained in the

Plan that plaintiff attached to his Complaint as controlling the provisions of his 2001 long-term

disability claim, and which states as follows:

> **Can legal proceedings be started at any time?**

> No, you or your authorized representative cannot start any legal actin:

> 1.    until 60 days after proof of claim has been given; nor
> 2.    more than 3 years after the time proof of claim is required.

---

[13] "Attached as Exhibit A is the affidavit of Bruce Dominick, a senior consultant with Unum, who can verify that the document attached as Exhibit 1 to his affidavit is a true and correct copy of the Policy as it existed in 2001.  Unum requests that it may supplement the administrative record, filed on July 26, 2010, with this pertinent document.  The contractual limitations provision can be found on the page labeled Unum 000031 of that document."  ECF 42, footnote 1.

(5:09 CV 2969)

ECF 1-1, p. 17 of 23.

B.     Plaintiff's Opposition to the Timeliness Defense, Defendants' Request
       To Supplement the Administrative Record, and Alleged Procedural Defects

Plaintiff disputes defendants' position that the complaint is time-barred, opposes Unum's request to supplement the 2001 administrative record, and raises various procedural defects,[14] as discussed below.  Plaintiff has filed an affidavit in support of his position.  *See* ECF 39.

1.     *Defendants should not be permitted to supplement the 2001 administrative record*

The parties agree that the portion of the Seibert Keck long-term disability policy presently in the administrative record for plaintiff's 2001 claim does not contain any language regarding a three-year statute of limitations period.  According to defendants, only the portion of the policy necessary to consider the merits of plaintiff's 2001 long-term disability claim is contained in the 2001 administrative record, not the entire policy.  However, the entire policy contains the three-year limitations language, and defendants seek leave to supplement the record with the entire policy applicable to plaintiff's 2001 claim.

Citing *Wilking v. Baptist Healthcare System, Inc.,*[15] plaintiff argues that he may be permitted to supplement the administrative record under limited circumstances involving due process or bias issues by the plan administrator in denying a claim for benefits, but that the plan administrator may not supplement the record to support a denial of benefits.  Accordingly,

---

[14] The Court's conclusion that plaintiff's complaint with respect to his 2001 claim is time barred by the three-year contractual statute of limitations also bars plaintiff's claims with respect to various alleged procedural defects in the claims handling process.  However, those issues were extensively briefed by the parties and so the Court will briefly address those topics in this Memorandum Opinion.

[15] 150 F.3d 609 (6th Cir. 1998).

14

(5:09 CV 2969)

plaintiff concludes that defendants should not be permitted to supplement the 2001

administrative record with the entire policy in order to bar the present legal action regarding his

2001 long-term disability claim, when the portions of the policy presently contained in the

record do not include the limitations language.

      2.     *Summary Plan Description does not contain three-year limitations period*

The Code of Federal Regulations requires that certain information be provided to Plan

participants.  29 CFR § 2520.102-3.  It is plaintiff's position that the language in the Seibert

Keck summary plan description (SPD) advises participants in the Plan of their right to bring a

legal action if a claim is denied, but does not provide any time limits for doing so.  The Plan

itself, however, contains the three-year time limit for bringing a legal action.

Basically, it is plaintiff's position that the SPD he received advised claimants of the right

to bring a legal action, but not the time frame for doing so.[16]  However, even assuming plaintiff's

---

[16] Citing *Edwards v. State Farm Mut. Auto Ins. Co.,* 851 F.2d 134, 136 (6th Cir. 1988), plaintiff argues that the terms of the SPD, which refers to a claimant's right to bring a legal action but does not contain a limitations period, controls over the terms of the Plan, and therefore the limitations period in the Plan cannot be enforced.  In support of this position, plaintiff submitted an affidavit (ECF 39) which states as follows:

    "1.    The Summary Plan description (SPD) which is attached as Exhibit A
        [to my affidavit] is a true and accurate copy of the Summary Plan
        Description given to me in reference to Seibert Keck Long Term
        Disability Plan.  None of the SPD's given to me with respect to this
        plan ever contained any contractual statute of limitations language."

The document attached to plaintiff's affidavit (ECF 39) and marked as Exhibit A (ECF 39-1) is a 21 page document entitled:  "Seibert Keck Insurance Agency, Inc. - Your Group Long Term - Policy No. 344788-002."  The "Exhibit A" label was placed on the title page of the document.  Page 15 of Exhibit A to plaintiff's affidavit contains the three-year limitations language.  *See* ECF 39-1, p. 12 of 15.  Page 18 of Exhibit A is captioned "Summary Plan

(continued...)

15

(5:09 CV 2969)

argument that he received only pages 18-21 of the Seibert Keck summary plan description,

caution must be exercised concerning the force to be given language found in the SPD.  *Bender*

*v. Newell Window Furnishings, Inc.,* --F3d--, 2012 WL 1537916 at *9, footnote 9 (6th Cir. 2012)

(citing *Cigna Corp. v. Amara,* 131 S.Ct. 1866, 1878 (2011) (". . . we conclude that the summary

documents, as important as they are, provide communication with beneficiaries *about* the plan,

---

[16](...continued)
Description."  *See* ECF 39-1, p. 13 of 15.  Page 20 of Exhibit A states: "7.  If you have a claim
for benefits which is denied or ignored . . . you may file suit in a state or federal court."  *See* ECF
39-1, p. 14 of 15.
        Plaintiff's affidavit states that Exhibit A attached to his affidavit "is a true and correct
copy of the Summary Plan Description given to me in reference to the Seibert Keck Long Term
Disability Plan."  On its face, the statements in plaintiff's affidavit refer to the entire document
attached to his affidavit as Exhibit A as the "Summary Plan Description."  This statement is
consistent with the affidavit of Peter Seminaroti, an independent contractor employed by Seibert
Keck, filed by Unum.  Peter Seminaroti is responsible for Seibert Keck's employees' enrollment
and participation in the Seibert Keck Group Long Term Disability Plan, which is funded by the
Long Term Disability Policy.  According to Seminaroti, Seibert Keck "considers the entire
document attached as Exhibit A [to plaintiff's affidavit] as the summary plan document for
Policy No. 34478 regardless of the label on page 18 of the document."  *See* ECF 47-2.
        No subsequent affidavit was filed by plaintiff.  However, plaintiff's supplemental brief
on the timeliness issue attempts to offer a post-affidavit explanation of Exhibit A to plaintiff's
affidavit as follows:
                "While Jerry Engleson recalls that the 'Summary Plan Description'
                attached to his Affidavit is the same Summary Plan Description portion
                as what he had received and relied upon, he has no recollection of
                receiving the entire plan document with the Summary Plan Description
                portion.  (Affidavit of Jerry Engleson, Doc ID #39).  His affidavit clearly
                did not intend to authenticate that portion of the document which was
                labeled as the Plan.  The attachment to the affidavit consisted of both
                the Plan and the Summary Plan Description, which was an attachment
                to an email from Defendants' counsel."
ECF 49, p. 4 of 16.

16

(5:09 CV 2969)

but that their statements do not themselves constitute the *terms* of the plan for purposes of §

502(a)(1)(B).")).

Accordingly, the Court concludes that even if plaintiff received only the portion of

Exhibit A to his affidavit reflected in pages 18-21, which advises of the right to file a legal action

but not the time frame for doing so, that language cannot change the terms of the Plan itself,

which contains the three-year contractual statute of limitations language.

     3.     *Plaintiff unaware of any limitations period*

Plaintiff also argues that he should not be subject to the three-year limitations provision

because he was unaware of the three-year contractual statute of limitations in the long-term

disability policy, and never actually received a copy of the policy.  ECF 39, par. 2.  However,

plaintiff's alleged unawareness is not sufficient, on its own, to render the Plan's limitations

provision unenforceable.  *See Clark v. NBD Bank, N.A.*, 3 Fed. Appx 500 (6th Cir. 2001).

     4.     *Unum waived its right to assert a limitations defense*

As discussed *supra*, Unum sent plaintiff a letter in December 2008 notifying him that his

2008 claim for long-term disability benefits had been approved with a disability date of August

5, 2008.  In that letter, defendants advise plaintiff that if he has additional information to support

an earlier disability date, defendants would reconsider his claim.

With respect to his 2001 claim, defendants stated:

> "We note that you previously had a disability claim in 2001 with Unum
> that was denied due to lack of ongoing medical support for continued
> impairment.  We also note that you appealed the adverse decision and
> the decision was upheld on October 10, 2001.  You re-appealed again
> and the decision was again upheld on November 29, 2001. . . . We are
> unable to overturn a disability claim decision where 2 appeals have

17

(5:09 CV 2969)

> been clearly made and upheld; therefore your August 5, 2008 date of
> disability is the correct date to use in administering your [2008] claim. . . .
> If you or your physician(s) have additional information to support your
> request for disability benefit based on an earlier date of disability,
> we will be happy to reconsider your claim."

ECF 36, UA-CL-LTD 1129-30.

Plaintiff argues that Unum's language regarding consideration of an earlier disability date demonstrates that defendants recognized they had a duty to reevaluate his 2001 claim, and that because Unum did not assert the statute of limitations as a basis for refusing to reconsider his 2001 claim, defendants have waived their right to assert that defense in this action.

The statute of limitations language at issue controls the time in which a claimant may file a legal action, and not a request by Engleson to Unum for administrative reconsideration of his 2001 claim.  Further, the language of defendant's letters to plaintiff is clear that his 2001 claim had been denied through two administrative appeals and would not be further reconsidered. Plaintiff's claim was denied in 2001, not in 2008.  Unum's letters declining to further consider his 2001 claim do not constitute an "adverse benefit determination"[17] and do not revive plaintiff's right to now pursue his 2001 claim in federal court.  A claimant cannot avoid a statute of limitations or renew stale claims simply by making an inquiry or seeking reconsideration of past claims.  *See Hughes v. Unum Provident Corp.,* 2006 WL 51170 (M.D.N.C.); *Dameron v. Sinai Hospital of Baltimore, Inc.* 595 F. Supp. 1404, 1414 (D.Md. 1984).

---

[17] *See* 29 C.F.R 2560.503-1(m)(4)(2008).

18

(5:09 CV 2969)

In any event, the Court finds Unum's reference to plaintiff's denied 2001 claim in the letter awarding benefits for his 2008 claim does not satisfy the standard for finding waiver of a limitations defense:

> An insurance company waives its right to assert a limitations defense "when the insurer, by its acts or declarations, evidences a recognition of liability under the policy, and the evidence reasonably shows that such expressed recognition of liability . . . have led the insured to delay in bringing an action on the insurance contract."

*Longazel v. Fort Dearborn Life Ins. Co.*, 2008 WL 3166315 at * 4 (N.D. Ohio) (quoting *Klein v. State Farm Fire & Casualty,* 250 Fed. App'x 150, 156 (6th Cir. 2007)).

When defendant's 2008 letter was issued in connection with the award of plaintiff's 2008 long-term disability claim, the contractual statute of limitations on his 2001 claim had long since run. Therefore, defendant's letter could not have caused plaintiff to delay in bringing a legal action on his 2001 claim until after the limitations period had expired.

5.  *Plaintiff not notified of Claims Reassessment Process as required by RSA*

Further in support of his procedural argument for recovery of benefits, plaintiff contends defendant Unum was required to notify persons whose claims were denied between 1999 and 2004 about the option to have their claims reviewed again. In his affidavit, plaintiff states that he never received a notice of his right to participate in the RSA claim review procedure. ECF 39, par. 6.

Plaintiff acknowledges that defendants produced discovery on this issue which indicates that plaintiff was notified of his right to participate in the RSA. A "true and correct copy" of the letter sent to plaintiff (ECF 42-5) regarding the RSA claim review process is attached to the affidavit of Thomas Diebold, a consultant with Unum for 8 years, who is knowledgeable about

19

(5:09 CV 2969)

Unum's participation in the RSA and the procedures that were used by Unum to notify and enroll eligible claimants in the Claims Reassessment Process.  (ECF 42-3).  According to defendants' records, which were reviewed by Diebold, there is no evidence that Engleson's claims reassessment letter dated January 13, 2005 (ECF 4205) was not delivered, and no response to the letter was received from plaintiff.  ECF 42-3.  The administrative record from plaintiff's 2008 claim file reflects that the RSA notice was sent but no response was received from plaintiff. ECF 36, UA-CL-LTD 1195.  Plaintiff does not contend in his affidavit that the letter was not sent, but that he did not receive it.  Absent participation in the Claims Reassessment Process,                    the contractual statute of limitations, the RSA did not toll the contractual statute of limitations with respect to plaintiff' s 2001 claim.

      6.    *Defendant did not provide copies of documents pertinent to denial of 2001 claim*

      Plaintiff also alleges that he requested, but did not receive, copies of the documents used by defendant to conclude his 2001 disability claim should be denied.   Plaintiff's letter request, dated September 24, 2001, is contained in the administrative record at ECF 35, UA-CL-LTD 81.  While plaintiff asserts that he did not receive these documents, the file copy of a letter dated October 10, 2001 from Unum to plaintiff, contained in the administrative record at ECF 35, UA-CL-LTD 76, reflects that the documents were provided as plaintiff requested:

> " . . . Our letter dated August 22, 2001 clearly and accurately outlines the relevant policy provisions, and the basis for the denial decision.
> Rather than reiterating that information here, we refer you to that letter, which is included in the enclosed packet of information (per your request of September 24, 2001).
>
> We are very sorry that our determination could not be more favorable to you. . . . If after reviewing the enclosed packet of information, you

20

(5:09 CV 2969)

> feel there is additional information available that might have a bearing
> on our position, please submit it for our review."

ECF 35, UA-CL-LTD 76.

## IV.  LAW AND ANALYSIS

A.    ERISA Statute of Limitations

ERISA does not contain a statute of limitations for claims for benefits pursuant to 29

U.S.C. § 1132(a)(1)(B), and courts normally apply the most analogous state statute of

limitations.  In Ohio, that statute of limitations in an ERISA claim under 29 U.S.C. § 1132(a) for

individual benefits is the statute applicable to breach of written contract claims, which is fifteen

years.  *Redmon v. Sud-Chemie Inc. Ret. Plan for Union Employees,* 547 F.3d 531, 534 (6th Cir.

2008) (quoting *Meade v. Pension Appeals and Review Committee*, 966 F.2d 190, 194-95 (6th

Cir. 1992)); Ohio Rev. Code § 2305.06.

However, when the plan contains a contractual statute of limitations, courts generally

apply the contractually agreed upon statute of limitations provided that the limitations period is

reasonable.  *Rice v. Jefferson Pilot Financial Insurance Company*, 578 F.3d 450, 454 (6th Cir.

2009).  The Sixth Circuit has upheld three-year limitations period as reasonable on numerous

occasions.  *Id.*

B.    Defendants' Claim that Plaintiff's Complaint is Time-barred

As previously noted, the matter presently under consideration has presented itself in an

unusual manner. Defendants' challenge to the validity of plaintiff's complaint on the grounds

that his claims are barred by a three-year contractual statute of limitations is in the nature of a

dispositive  motion.  *See Koert v. GE Group Life Assurance Co.,* 2005 WL 1655888 at * 1 (E.D.

(5:09 CV 2969)

Pa.) (defendant's position that plaintiff's complaint is time-barred is in the nature of a motion to dismiss).

In the context of a motion to dismiss, the Court construes the pleadings in a light most favorable to the plaintiff. Dismissal is appropriate when "the facts as alleged in the complaint are insufficient to make a valid claim or if the claim shows on its face that relief is barred by an affirmative defense." *Riverview Health Institute LLC v. Medical Mutual of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010). Whether on a motion to dismiss, or establishing an affirmative defense that plaintiff's claim for 2001 disability benefits is barred by a contractual statute of limitations, defendants bear the burden of proof. *Directv v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (the defendant has the burden of showing that plaintiff has failed to state a claim for relief); *see* Fed.R.Civ.P. 8(c)(1); *see also, Schoettler v. Wachovia Corp.,* 2008 WL 5101367 at * 7 (E.D. Cal).

In the context of a motion to dismiss, the Court may consider documents attached as exhibits to pleadings in ruling on a motion to dismiss. *Clark v. Walt Disney Co.,* 642 F. Supp. 2d 775, 782 (S.D. OH 2009) (citing Fed.R.Civ.P. 10(c) and *Weiner v. Klais & Co., Inc.,* 108 F.3d 737, 745 (6th Cir. 1999)). Accordingly, the Court may consider the Plan plaintiff attached to his Complaint in deciding whether plaintiff's complaint is time barred by a three-year contractual statute of limitations as asserted in defendants' eleventh affirmative defense.

As discussed, *supra*, the Plan document attached to the complaint, which plaintiff asserts governs his 2001 claim, contains a three-year contractual statute of limitations for filing legal

22

(5:09 CV 2969)

claims.  Accordingly, the Court concludes plaintiff's complaint is time-barred by the contractual

three-year statute of limitations.[18]

C.      Supplementing the Administrative Record

        Generally, when a district court reviews a plan administrator's denial of benefits, the

court cannot look beyond the administrative record.  However, "[t]he case law makes clear . . .

that the rule was intended to prevent courts from looking past the *evidence of disability*-medical

reports, correspondence, test results, and the like-considered by the plan administrator; it does

not suggest that the rule covers the benefit plan itself, which is in the nature of a contract."  *Bass*

*v. TRW Employee Welfare Benefits Trust*, 86 Fed. Appx. 848, 851 (6th Cir. 2004) (emphasis in

original); *Brooking v. Hartford Life and Accident Ins. Co.*, 167 Fed. App'x 544, 547 fn. 4 (6th

Cir. 2006) (rule preventing reviewing court from considering evidence outside the administrative

record does not preclude consideration of plan documents, including summary plan description).

        In this case, the policy limitations language with which defendants seek to supplement

the record is not related to plaintiff's disability and is not sought to support a denial of benefits,

but to bar a legal action seeking review of a denial of benefits.  Further, the long-term disability

policy, like the Plan itself, is in the nature of a contract.

_____

        [18]  The Court recognizes that a significant amount of evidence outside of the pleadings
was advanced by the parties on this issue.  Rule 12 motions may be converted to Rule 56
motions if evidence outside the pleadings is considered and the parties receive adequate notice.
In this case, plaintiff's pleadings and attachments thereto support the Court's conclusion that
plaintiff's complaint is time-barred by the Plan.  The evidence advanced by the plaintiff outside
of the pleadings in opposition to the timeliness defense, when considered in a light most
favorable to plaintiff, does not alter the conclusion that plaintiff's complaint is time-barred as a
matter of law.

(5:09 CV 2969)

However, even if the policy in this case cannot be considered a Plan document for purposes of the above-described exception to supplementing the administrative record,[19] the Court may in any event consider the Plan which plaintiff attached to his complaint.  The three-year contractual statute of limitations is contained in the Plan, which controls the terms of plaintiff's 2001 claim.  Accordingly, defendants' request to supplement the 2001 administrative record with certain policy provisions is moot, and denied as such.

D.      Equitable Relief

Plaintiff claims that even if the contractual statute of limitations bars plaintiff's 2001 long-term disability ERISA claim, various procedural violations which occurred with respect to Unum's handling of plaintiff's 2001 disability claim warrants equitable relief under § 502(a)(3), 29 U.S.C. § 1132(a)(3).  The Court has addressed, *supra*, plaintiff's various arguments regarding alleged violations of ERISA requirements and found them to be without merit.  However, even if there was merit to plaintiff's alleged procedural violations, those claims are also time-barred  by three-year statute of limitations.  *Longazel v. Fort Dearborn Life Ins. Co.*, 2008 WL 3166315 at *3.

Further, the Court concludes that the facts of this case do not warrant application of the equitable tolling doctrine to the Plan's three-year statute of limitations for bringing a legal action.  There are five factors for a court to consider in determining whether equitable tolling is appropriate: (1) lack of actual notice of filing requirement; (2) lack of constructive knowledge of

---

[19] *See Musto v. American General Corp.*, 861 F.2d 897, 900-01 (6th Cir. 1988).

(5:09 CV 2969)

filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to defendant; and (5) plaintiff's reasonableness in remaining ignorant of the notice requirement.

In this case, plaintiff's affidavit reflects that he had actual notice that he could file a claim in court if his 2001 claim was denied.  When his 2001 claim was denied twice, in spite of being aware that he was entitled to bring a legal action, he made no inquiry into the particulars of that process, and his time to file a legal action under the Plan expired in March 2005.  The prejudice to defendant revisiting a claim denied eight years before this case was filed is significant.

Further, it was not reasonable for plaintiff to remain ignorant of the limitations period for bringing a legal action.  Plaintiff's career was in the property and casualty insurance field.[20] While this type of insurance is much different than insurance benefits under ERISA, plaintiff's insurance experience well acquainted him with the concepts of insurance policies and time limitations for filing that are commonly found in insurance policies.  Yet when his 2001 claim was denied after multiple appeals, he did not request a copy of the policy.  Lastly, this is not a case where defendants' actions caused plaintiff to miss the filing deadline.  Defendants did not mislead plaintiff about the time for filing a legal action or mislead him that legal action would not be necessary in connection with the denial of his 2001 claim.

Accordingly, the Court concludes that the analysis of the factors above do not weigh in favor of equitable tolling, and plaintiff has not advanced evidence of any extraordinary

---

[20] *See* testimony of Jerry Engleson, ECF 56, p. 81 (Plaintiff worked in the insurance industry since 1972.  Seibert Keck insurance agency offered insurance in the areas of "property and casualty, life, health, personal lines."  According to his testimony, plaintiff's experience was in property and casualty insurance.

(5:09 CV 2969)

circumstance that prevented him from timely filing a legal action in connection with the denial of

his 2001 long-term disability claim.  *See Longazel,* 363 Fed Appx. at 368; *Rice* 587 F.3d at 457.

## V.  CONCLUSION

For the reasons contained herein, the Court concludes that the Plan's three-year

contractual statute of limitations bars plaintiff's complaint regarding the denial of his 2001

long-term disability claim under the Plan.  Accordingly, plaintiff's complaint is DISMISSED.

Defendants' request to supplement the 2001 administrative record is denied as moot.

IT IS SO ORDERED.


  June 29, 2012                                      *s/ David D. Dowd, Jr.*
Date                                                David D. Dowd, Jr.
                                                    U.S. District Judge

26